CITY OF INDIANAPOLIS, ETC. *v.* WALKER ET AL.

[No. 19,255. Filed June 30, 1960. Rehearing denied February 1, 1961. Transfer denied October 6, 1961.]

*Perry E. O'Neal, Patrick J. Smith, C. Harvey Brad-ley, Jr.* and *Thompson, O'Neal & Smith,* of counsel, all of Indianapolis, for appellant.

Mark W. Gray, Erle A. Kightlinger, Gustav H. Dongus, Armstrong, Gause, Hudson & Kightlinger, and Fansler, Fauvre, Dongus & Chambers, of counsel, all of Indianapolis, for appellees.

Ax, P. J.—Appellees complained that appellant was negligent in permitting inflammable and explosive gas to escape from appellant's gas mains causing said gas to intrude upon premises of appellees where it exploded and damaged appellees' house and contents.

Appellant denied negligence, charged appellees with contributory negligence, and also that an intervening third party had damaged appellant's gas main while digging for a sewer construction, and that appellant had no knowledge of this damage prior to the explosion.

From a jury verdict of $37,985.94 in favor of appellees, appellant filed motion for new trial specifying ten causes. The sole assignment of error is the overruling of the motion for new trial.

Appellant's first two causes are that the verdict is not sustained by sufficient evidence and is contrary to law. Since the verdict was against appellant, ▮▮▮ which had the burden to prove its defenses of contributory negligence by appellees and proximate cause by the act of the intervening third party, no question is raised as to the insufficiency of evidence concerning these defenses. *Rowe* v. *Johnson* (1945), 223 Ind. 289, 60 N. E. 2d 529. The only question which must be answered in regards to these defenses is whether or not the verdict is contrary to law. In answering this question we must consider only the evidence most favorable to appellees, together with all reasonable inferences to be drawn therefrom. "It is only 'where the evidence is without conflict and leads to but one reasonable conclusion and the trial court has reached a contrary conclusion,' that the verdict or decision will

be disturbed as being contrary to law." *Rowe* v. *Johnson, supra.*

From our review of the evidence concerning these alleged defenses of appellant, we fail to find any undisputed evidence from which the jury might have inferred that appellees were guilty of contributory negligence, or that the intervening acts of a third party were the proximate cause of the damages suffered by appellees.

In order to test the sufficiency of the evidence to sustain the verdict for appellees, we must consider only the evidence most favorable to appellees, and we are confronted with the following facts:

Appellees owned as tenants by the entireties on the morning of February 6, 1955 a residence located at 3724 Manor Court in Indianapolis, Indiana. The appellees had no gas service in their home. They retired for the night, and shortly after midnight they were awakened by the smell of gas and the crying and choking of the children. Appellee, Mr. Walker, on his first trip to the basement, could not locate any difficulty after checking around the furnace, and he proceeded upstairs where there was a linen chute and there the odor of gas was more pronounced. He then returned to the basement, flicked on a light switch in the northwest corner of the basement and looked around a deep freeze and, discovering nothing significant, flicked the light switch off, which was immediately followed by a terrific explosion.

The explosion totally destroyed a home and personal property which had a combined alleged reasonable value at the time of the loss of in excess of the amount of the jury verdict. The facts as to the amount of damage are uncontradicted in this record, and the appellant offered no evidence to the contrary.

The explosion was caused by seeping gas from a leak in a main of the appellant. This was not disputed, and in fact was admitted at the oral argument before this court. Thus, we are here confronted with testing the evidence only to ascertain whether or not there is any evidence of negligence on the part of appellant which was the proximate cause of the explosion causing the damages complained of.

A witness, Mrs. Wirth, who lived a few doors north of the appellees' home, testified that she had called the appellant prior to the explosion and had made numerous complaints of smelling gas away from the water heater and in the easterly part of her basement; that after the gas company would respond to such calls, she would still smell gas in the same place, which was near the point where the service pipe entered her basement; that the appellant's service personnel were there at least once a month, and the last call was approximately a month prior to the explosion; that at no time prior to the explosion had they made bar holes or used an explosion meter; and, that prior to the explosion she had smelled gas during the winter of 1954 and 1955 on an average of once a week.

In the early afternoon on the day following the explosion, the appellant by a process of driving bar holes and using Davis explosion meters ascertained a break in one of its mains in front of the home of Mrs. Wirth, which break was of such size that the operator of the excavating tool had to turn his equipment around in the opposite direction to avoid gas blowing in his face.

The excavations of the appellant further revealed a drainage tile approximately a foot to a foot and a half below the main, which was broken but which tile led to the foundations of the appellees' home although it did not directly enter the basement. It was stipulated

by the parties that this drainage tile had been installed in its present position prior to the installation of the gas main.

Two segments of steel pipe removed by appellant from the break in the gas main were tested by experts who testified that the break occurred approximately one and one half to two years prior to the explosion.

The evidence indicated a possibility that the damage to the main might have been caused by the Wm. F. Steck Company when it dug a ditch in the street in front of the Wirth property to make a sewer cap approximately sixteen months prior to the explosion. However, the evidence indicated that the appellant also had the opportunity to have damaged the pipe at about the same time when it connected gas to the Wirth residence. The most that this evidence indicated was ample opportunity on the part of either the Wm. F. Steck Company or appellant to have damaged the gas main, and thus we have disputed evidence which this court will not weigh.

Irrespective of its initial damage and by whom caused, the gas main still remained fractured and leaking for a period of approximately two years prior to the explosion. During this time the appellant received frequent complaints of unexplained gas odors in the basement of the Wirth residence immediately in front of which this damaged main was leaking.

From the evidence presented the jury had the following facts in addition to others recited herein before it:

A husband and wife with two babies virtually blown and burned out of their home and all of their possessions lost in the explosion and resulting fire, without any previous forewarning whatsoever, and a leak of substantial proportions in a nearby gas main. There

was evidence that in frozen ground gas will follow insidiously the line of least resistance—that the open tile drain to appellees' house offered this line of least resistance as the ground was frozen at the time of the explosion; that for approximately two years the gas main was fractured and leaking; that a lady in front of whose house the leak existed and only a few doors from the appellees, had been making persistent complaints of gas leakage over a considerable extent of time to the appellant, which repeated complaints of the odor of gas were never eliminated by the activities of the gas company; that after the house had blown up, it only took seven hours by the use of standard and accepted practices to actually discover the leak and repair it, while months previously the appellant used neither explosion meter devices nor bar holes, which are standard practice, but merely went to the neighbor's home and "tinkered" with the appliances; and, that this record was replete with references that the cause of this explosion was the gas which escaped from this open main.

The foregoing statement of the evidence favorable to the appellees in this case indicates that the evidence is amply sufficient to sustain the verdict. The record is voluminous with the Bill of Exceptions containing the evidence consisting of 566 pages. Without unduly lengthening this opinion with factual statements of witnesses, we are of the opinion that there is sufficient evidence in the record from which the jury could have inferred actionable negligence on the part of appellant in failing to take all necessary and reasonable precautions and to perform such acts as were necessary to prevent the explosive and highly inflammable gas from escaping from its own conducting lines to the damage of appellees, particularly since

the evidence discloses that the appellant received several warnings that gas was escaping from its line in the vicinity of the residence of appellees in time to have corrected the situation and to have eliminated the hazard and danger following as a consequence of the escaping gas.

There are several decisions in Indiana and other jurisdictions which sustain a recovery on somewhat similar facts. *The Consumers' Gas Trust Co.* v. *Perrego* (1895), 144 Ind. 350, 43 N. E. 306; *The Mississinewa Mining Company* v. *Patton et al.* (1891), 129 Ind. 472, 28 N. E. 1113; See Annotations: 25 A. L. R. 262, 29 A. L. R. 1250, 47 A. L. R. 488, 90 A. L. R. 1082, 138 A. L. R. 870.

*The Consumers' Gas Trust Co.* v. *Perrego, supra,* case allowed recovery under a set of facts and evidence which we believe was no stronger in evidencing negligence than in the instant case.

In jurisdictions other than Indiana, there seems to be a difference in the degree of care required by a gas company to prevent the escape of gas.

"It is generally held that a gas company must exercise care and diligence in order to avoid injury to health or property of others by the escape of gas. The degree of care which it must exercise has been described as ordinary care, as due and reasonable care, and as a high degree of care. These terms, however, are said to mean no more than that care and diligence should vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted. In other words, in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent the escape of gas from its pipes proportionate to the danger which it is its duty to avoid." 24 Am. Jur., §24, pp. 682-683.

A review of our Indiana cases relative to degree of care seems to indicate that in Indiana we have adopted the rule of ordinary care. Thus, we are confronted with determining in the instant case whether or not there was any evidence before the jury from which it could infer that the appellant gas company failed to exercise that degree of care and caution that an ordinarily careful and prudent person similarly surrounded and situated would have exercised in finding and eliminating the leak in its gas main which leak caused the explosion resulting in damages suffered by appellees. *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 97 N. E. 580.

In the case at bar a break in a main leaking gas under high pressure for at least a two-year period and of which there were frequent complaints prior to the explosion, certainly put the gas company here, in the exercise of ordinary care, under a duty to perform and do prior to the explosion the same things it did within a period of seven hours after it started to look for the break. Why it didn't start even after the explosion, shortly after midnight that night, is inconceivable in view of the damage in the area; but when the gas company did get started with bar holes and explosion meters it located and repaired the leaking main within seven hours, which its own men said is standard practice and which an expert placed on the stand by the appellees testified would have been the reasonable precautions required prior to the explosion in view of the nature of the complaints. The appellant argues that the gas company had no duty which it breached and that even if it had such a duty, it was not the proximate cause of this explosion. In the light of the facts hereinabove set forth and the laws cited herein, the absurdity of the appellant's position is obvious in its mere statement.

In the recent case of *Northern Indiana Public Service Company* v. *Darling* (1958), 239 Ind. 237, 154 N. E. 2d 881, 883, the Supreme Court said:

" 'Courts take judicial knowledge of the fact that natural gas is a highly inflammable and explosive substance. *Indiana Natural Gas and Oil Co.* v. *Jones* (1895), 14 Ind. App. 55, 42 N. E. 487; *Jamieson* v. *Indiana Natural Gas and Oil Company* (1891), 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652; *Mississinewa Mining Co.* v. *Patton* (1891), 129 Ind. 472, 28 N. E. 1113.' *Public Service Co. of Indiana* v. *Dalbey* (1949), 119 Ind. App. 405, 415, 85 N. E. 2d 368, 372. We also take judicial notice that when the ground is frozen, a leak from a gas main may go underground for many feet and finally escape into buildings where it may cause fires and explosions."

Again in *Public Service Co. of Ind.* v. *Dalbey* (1949), 119 Ind. App. 405, 85 N. E. 2d 368, this Court said at page 415:

"The question of negligence in such a case depends on whether the gas company exercised that degree of care and caution that an ordinary careful and prudent person similarly surrounded and situated would have exercised, and such question is ordinarily one of fact for the jury. *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 97 N. E. 580.

"Where facts may be reasonably subject to different inferences and conclusions the question of whether negligence is shown is for the jury. *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005; *Rush* v. *Hunziker* (1940), 216 Ind. 529, 24 N. E. 2d 931; *Dulin* v. *Long* (1944), 115 Ind. App. 94, 54 N. E. 2d 652."

Further, in *Consumers' Gas Trust Company* v. *Corbaley* (1895), 14 Ind. App. 549, 43 N. E. 237, our Court said at pages 552 and 553:

"The liability, if any, of the appellant, as we view the evidence, grows out of the failure of the appellant to exercise ordinary care in the management and maintenance of the line.

"There is as before observed evidence tending to prove the existence of a leak at this point for several years before the explosion, and that appellant knew, *or by the exercise of ordinary care should have known,* of the existence of such a leak long before the accident." (Our emphasis)

Again, in *Southern Indiana Gas Co.* v. *Tyner, supra,* our Court said at page 489:

"The negligence in such cases consists not in failing to inspect the pipes of the owner of the building, but rather in furnishing the gas through the pipes *after obtaining the knowledge or information that would suggest to a person of ordinary care and prudence the danger of allowing the gas to pass through such pipes.* The gas company has its option to refuse to allow its gas to pass through such pipes, and failing to exercise this privilege, when the facts and circumstances are such as to suggest to a person of ordinary care and prudence that it should, it assumes the risks and consequences that may naturally flow from an undertaking involving such peril and hazard to innocent third persons. This must be so, because the gas is not less dangerous when it flows through defective pipes belonging to another person than when it flows through the company's own pipes, and the dangers to which innocent third persons are exposed are identical in both cases." (Our emphasis)

Applying the facts in the case at bar that have been recited above to the law cited in the above cases, it appears that the evidence is sufficient to sustain the verdict and the verdict is not contrary to law. In fact, the transcript here reveals evidence of the most convincing character sustaining this verdict. The question of negligence in this case was a question of fact for

the jury to determine, and this jury which was able to hear and see the witnesses and hear the explanations of the appellant, evidently resolved this matter in favor of the appellees. Upon the record before us, there appears ample evidence from which the jury could have, and apparently did, infer that the circumstances were such that the appellant knew, or should have known under such circumstances, that the escape of the dangerous and highly explosive gas from its proper confines might result in damages to the property of the appellees.

We conclude therefore that the decision is not contrary to law, and the verdict is amply sustained by the evidence to which reference has been made herein before.

The third cause of appellant in its Motion for New Trial urged that the trial court erred in overruling the appellant's Motion to Dismiss the action before the trial.

Appellant in its unverified motion to dismiss the action after the filing of its answer and before trial asserted that the Wm. F. Steck Co. had broken appellant's gas main without appellant's knowledge, and appellees not having sued such third party, the action should be dismissed under the fourth subsection of §2-901, Burns' Ind. Stat. (1946 Repl.), reading as follows:

"An action may be dismissed without prejudice—

. . . . .

"Fourth. By the court, on the application of *some of the defendants,* where there are *others* whom the plaintiff fails to prosecute with diligence." (Our emphasis)

The word "others" in the above statute means "other defendants" and not some other person or persons that

appellees might have joined as a party defendant but did not. As stated in 2 Works', *Indiana Practice*, Section 35.10, p. 388:

"The third ground for dismissal by the court is the failure to prosecute *some of the defendants* with diligence." (Our emphasis)

Further, in 2 Works', *Indiana Practice* (1959 Supp.), Section 35.14, it is stated:

"A motion to dismiss is not an appropriate pleading to test matters outside the averments of the complaint, relating to jurisdiction and limitation of the action.

"The only ground upon which a court can dismiss an action on motion of some of the defendants is under section 2-901 Burns' 1946 Repl., clause four, which provides the court may do so if there are *other defendants* whom the plainitff fails to prosecute with diligence." (Our emphasis)

Also see: *State ex rel. Hurd* v. *Davis* (1949), 227 Ind. 93, 84 N. E. 2d 181.

That the word "others" means "other defendants" clearly appears in the light of the third subsection of the same statute which provides that an action may be dismissed without prejudice "by the court on the refusal to make the *necessary parties, after having been ordered by the court.*" Section 2-901(3), Burns' Ind. Stat. No such order was entered by the trial court.

Moreover, it is elementary that a plaintiff may sue one or more of several joint tort feasors, or all, at plaintiff's election. *Hoosier Stone Company* v. *McCain, Administrator* (1892), 133 Ind. 231, 234, 31 N. E. 956; *Richeson* v. *Hogmire, Admx.* (1936), 101 Ind. App. 530, 534, 199 N. E. 887.

Since appellees were not required to join Wm. F. Steck Co. as a co-defendant, it is obvious that there is

no merit whatsoever in appellant's motion to dismiss. And finally, if there was a defect of parties, such defect could only be raised by a verified answer in abatement where the alleged defect did not appear on the face of the complaint, and not having been so raised, the alleged defect was waived. Section 2-1011, Burns' Ind. Stat.; *Watson* v. *Burnett* (1939), 216 Ind. 216, 225, 23 N. E. 2d 420.

Appellant's fourth cause in its Motion for New Trial specified alleged error of the trial court in overruling appellant's motion to send the jury to view the premises. Appellant concedes in its brief that a motion to send the jury to view the premises is addressed to the discretion of the court and is not reviewable unless there has been an abuse of discretion. *Jackson Hill Coal, etc., Co.* v. *Bales* (1915), 183 Ind. 276, 279, 108 N. E. 962; *Chicago, etc., R. Co.* v. *Loer* (1901), 27 Ind. App. 245, 60 N. E. 319.

In *The Board of Commissioners of Shelby County* v. *Castetter* (1893), 7 Ind. App. 309, 317, 33 N. E. 986, the Court said:

"It would be an exceptional case, indeed, where this court would reverse a cause for an abuse of this discretion."

No such exceptional case is presented here, and there was no abuse of discretion. Appellees' home was virtually destroyed by the explosion of gas leaking from appellant's main and was torn down and completely rebuilt long before the trial. The field tile leading to appellees' premises and appellant's gas main were all buried underground. The maps and photographs in evidence furnished an adequate representation of the area and the location of the underground field tile, gas main and sewer. What useful purpose would have been served by having the jury view the area in question

is hard to imagine. The trial court properly overruled appellant's motion to send the jury to view the premises. Further, in view of the testimony that the house was a total loss and that it would have been impossible to rebuild or reconstruct it in any manner, which was uncontroverted, the jury if sent to view the premises would have been viewing a different home entirely than that which was destroyed by the explosion. Under those circumstances this is a matter discretionary with the trial court and no error can be predicated thereon.

Ground No. 5 of appellant's motion for a new trial setting forth alleged error in permitting appellees' witness to answer a hypothetical question propounded to him presents no question for review for the reason that it fails to set forth appellant's objection, the ruling of the Court, and the answer of the witness or the substance thereof. It is well settled that "to present error in the admission of evidence the motion (for a new trial) must set forth the question, objection, ruling of the court and the answer, or at least the substance thereof." Flanagan, Wiltrout and Hamilton's, *Indiana Trial and Appellate Practice* (1959 Supp.), Comment 8, §1812, p. 92, citing numerous Indiana cases; also pages 388-389 of the text. See among other cases: *Hire* v. *Pinkerton* (1955), 126 Ind. App. 23, 26, 127 N. E. 2d 244; *Highshew* v. *Kushto* (1956), 126 Ind. App. 584, 593, 594, 131 N. E. 2d 652; *Boyle* v. *State* (1955), 234 Ind. 215, 218, 219, 125 N. E. 2d 707; *Henderson* v. *State* (1956), 235 Ind. 132, 134, 131 N. E. 2d 326; *Matthews* v. *Adoniram Grand Lodge, etc.* (1958), 129 Ind. App. 395, 154 N. E. 2d 806, 808.

In cause No. 6 in its motion for a new trial, appellant claimed that the court erred in sustaining appellees' objections to the questions propounded to appellee,

George H. Walker, by the appellant on cross-examination concerning insurance coverage on the property destroyed.

The record fully attests to the fact that at no time was there any pleading filed by the appellant which sought to obtain the joinder of insurance companies to this action on the theory that they were necessary parties or which raised any question as to whether the appellees were the real parties in interest. The defense that a plaintiff is not the real party in interest, and hence has no right to sue, must be specially pleaded or it is waived. *Bowser, Administrator* v. *Mattler* (1894), 137 Ind. 649, 654, 35 N. E. 701, 36 N. E. 714; *Sputh* v. *Francisco State Bank* (1938), 105 Ind. App. 149, 154, 13 N. E. 2d 880.

The questions propounded were not proper cross-examination since the matters sought to be elicited were not gone into or opened up on direct examination and sought to establish a purported defense which the appellant had failed to plead. *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 8 N. E. 2d 993; 98 C. J. S., *Witnesses,* §397, p. 176.

Appellant urged as its cause No. 7 that the trial court erred in overruling appellant's Motion for a Directed Verdict at conclusion of all of the evidence. Here appellant has failed to exhibit clearly the points of fact and of law being presented and how they are applicable with citation of pertinent authorities relied upon as required by Rule 2-17(e) of our Supreme and Appellate Courts. Hence, under Rule 2-17(f) the cause is waived. Further, the appellees by virture of the evidence referred to above sustained the burden of proof and had made a prima facie case at the time they rested.

As its cause No. 8 of the Motion for New Trial, appellant complains of error of the trial court in refusing to give the appellant's tendered instructions numbers 20 and 21.

Appellant's requested Instruction No. 20 reads as follows:

"If you shall find from the evidence in this case that an intervening third party damaged the gas main of defendant and defendant had no notice of such damage, if you shall so find, and that such damage resulted in gas escaping and finding its way underground to plaintiff's residence without defendant's knowledge defendant would not be liable for any resulting damage."

This instruction is fatally defective in that it required appellant to have actual notice or knowledge of escaping gas and omits the requirement that appellant may be held liable if in the exercise of reasonable care it should have known of the existence of such escaping gas. *Consumers' Gas Trust Co.* v. *Corbaley, supra; Consumers' Gas Trust Co.* v. *Perrego, supra.*

Appellant's requested Instruction No. 21 refused by the trial court reads as follows:

"Where the negligence of a third person is of unusual character, if you shall so find, and the defendant's act or omission alone would not have produced the injuries to the plaintiffs, if you shall so find, the defendant will not be liable."

This instruction is likewise erroneous in that appellant is not relieved of liability for its own negligent acts because of the concurrent negligence of a third person. In *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299, 305, 64 N. E. 638, the Court said:

"It is well settled that where the plaintiff was injured, without his fault, by the concurrent negligence of the defendant and a third person, not subject to the plaintiff's control or direction, the defendant cannot avail himself of the negligence of such third person as a defense. *Board, etc.,* v. *Sission,* 2 Ind. App. 311; *Grimes* v. *Louisville, etc., R. Co.,* 3 Ind. App. 573; *Louisville, etc., R. Co.* v. *Davis,* 7 Ind. App. 222.

See also: *Huntington Light, etc., Co.* v. *Beaver* (1905), 37 Ind. App. 4, 11, 73 N. E. 1002; *Southern Indiana Gas Co.* v. *Tyner, supra,* pp. 491-492.

Appellant's cause No. 9 predicated upon claimed error in overruling of appellant's Motion for Judgment Notwithstanding the Verdict presents no question, as such a motion is not recognized in Indiana practice. *Pittman-Rice Coal Co.* v. *Hansen* (1947), 117 Ind. App. 508, 512-513, 72 N. E. 2d 364; *Thanos* v. *Fox* (1958), 128 Ind. App. 416, 420, 149 N. E. 2d 315, 317; *Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 105 N. E. 467.

Appellant's final cause No. 10 claimed error in assessing the amount of recovery, it being too large.

An examination of the evidence favorable to appellees relative to values of the house and contents destroyed indicates that by undisputed evidence the jury award of $37,985.92 was less than the damages shown by the evidence. The facts as to the damages are uncontradicted in the record, and appellant offered no evidence to the contrary. Thus, the appellant's contention that the jury award is too large is without merit. Also, the language in *Public Service Co. of Ind.* v. *Dalbey* (1949), 119 Ind. App. 405, 420-421, 85 N. E. 2d 368, should be noted, wherein the Court said:

"The appellant urges that the damages are excessive. *The only evidence as to the question of*

*damage was produced by the appellee herein and the appellant offered no evidence in this respect and the appellee's evidence stands before the court* uncontradicted. . . . It is only where the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption before this court is authorized to interfere with the verdict on this ground. *Southern Indiana Gas Co.* v. *Tyner, supra; Louisville, etc. R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, 74 N. E. 504; *Cleveland, etc. R. Co.* v. *Hadley* (1908), 170 Ind. 204, 84 N. E. 13; *Chicago, etc. R. Co.* v. *Vester* (1911), 47 Ind. App. 141, 93 N. E. 1039; *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812; *Vandalia Coal Co.* v. *Yemm* (1911), 175 Ind. 524, 92 N. E. 49, 94 N. E. 881; *Goldblatt Bros., Inc.* v. *Parrish* (1942), 110 Ind. App. 368, 33 N. E. 2d 835, 38 N. E. 2d 255; *Anthoulis* v. *Patiniotis* (1940), 108 Ind. App. 130, 27 N. E. 2d 375; *Yellow Cab Co.* v. *Kruszynski* (1935), 101 Ind. App. 187, 196 N. E. 136." (Our emphasis)

Finding no reversible error and being of the opinion that the case below was fairly tried on its merits, we hereby affirm the judgment.

Myers, J., and Cooper, J., concur.

Ryan, J., not participating.

Note.—Reported in 168 N. E. 2d 228.