ISLER & GUYE v. UNITED STATES (No. 2136).[1]

1. "SIMILITUDE" AND "NONENUMERATED" PROVISIONS.

According to a well-established rule the "similitude" provisions of the tariff act take precedence over the "nonenumerated" provisions. Therefore if a given importation does not respond directly to any of the dutiable enumerations of the act, but nevertheless is capable of classification thereunder because of a similitude of material, quality, texture, or use, duty should be assessed according to that similitude, rather than under a provision for nonenumerated articles.

2. IDENTITY OF MATERIAL IS NOT SIMILITUDE.

The fact that two articles are manufactured from the same material does not constitute a similarity between them within the sense of the similitude provision.

[1] T. D. 39146.

3. RELATIVE SPECIFICITY.

The provision of paragraph 335, tariff act of 1913, for "braids  *  *  *  suitable for making or ornamenting hats, bonnets, or hoods" is more specific than that of paragraph 319 for "other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk."

4. CELLOPHANE AND VISCA HAT BRAIDS.

Braids made of strips of cellophane and visca, to be used in making women's hats, more nearly resemble the hat braids composed of chip, grass, etc., of paragraph 335, tariff act of 1913, than they do articles composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk, paragraph 319, and are dutiable by similitude accordingly.

## United States Court of Customs Appeals, May 26, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44488.

[Modified.]

*Walden & Webster* for appellants.

*William W. Hoppin*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

[Oral argument February 23, 1922, by Mr. Webster and Mr. Isenschmid.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of certain braids composed of interlaced strips or bands of so-called cellophane and visca, designed to be used exclusively in making women's spring and summer hats. The bands are flat, are about three-fourths of an inch in width, and are not thicker than heavy paper; they are colored in various dark colors, and have a glossy appearance. The surface of the cellophane bands is quite smooth, while the visca bands are slightly grooved or striated. The basic or original material of which the bands are composed is said to be hydrocellulose, which is a material derived from wood or plant structure. It is first reduced to a semiliquid condition and chemically treated; in that condition it is homogeneous and free from filatures. It then passes through various operations whereby it is given certain fixed forms or shapes suitable for different uses. In one operation it is forced by pressure through minute openings and assumes the form of yarns, threads, filaments, or fibers of so-called artificial or imitation silk. By a different operation the material is forced through narrow slots and becomes ribbonlike bands similar to those composing the braids now in question. Or the plastic material may be run through rollers from which it issues in thin, wide sheets; these are cut into different forms and are used for various purposes, such as the wrapping of candy, perfumery, surgical dressings, transparent envelopes, millinery purposes, etc. In the present instance such sheets were cut as aforesaid into narrow bands or strips, and these were interwoven into braids for exclusive use in the making of women's spring and summer hats.

The appraiser described the merchandise as "hat braids composed wholly or in chief value of an artificial silk known as cellophane, visca, and pyroxylin." He returned it for duty at the rate of 60 per cent ad valorem as articles composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk, under paragraph 319 of the tariff act of 1913. The collector thereupon assessed duty upon the articles at the rate of 60 per cent ad valorem, in accordance with that return.

The merchandise in question comprised two entries; accordingly two protests against the assessment were filed by the importers. In each protest a claim was made for assessment at the rate of 15 per cent ad valorem, under the provision for nonenumerated manufactured articles in paragraph 385 of the act. While in one of the protests an alternative claim was made for assessment at the rate of 20 per cent ad valorem, under the provision in paragraph 335 for hat braids of straw and chip, suitable for making or ornamenting hats, bonnets, or hoods. Other claims included within the protests do not figure in this appeal.

The several protests aforesaid were submitted to the board and were overruled. The board held that the merchandise indeed did not respond directly to the enumeration of "articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk," contained in paragraph 319 aforesaid, but that nevertheless the articles in question were dutiable thereunder by similitude of material, quality, texture, and use, with those described in the paragraph. Accordingly, the board sustained the collector's assessment. The importers have appealed from that decision.

The following provisions of the tariff act are here copied for convenience of reference:

319. Yarns, threads, filaments of artificial or imitation silk, or of artificial or imitation horsehair, by whatever name known, and by whatever process made, 35 per centum ad valorem; beltings, cords, tassels, ribbons, or other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk or of artificial or imitation horsehair, or of yarns, threads, filaments, or fibers of artificial or imitation silk, or of artificial or imitation horsehair and india rubber, by whatever name known, and by whatever process made, 60 per centum ad valorem.

335. Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained, 15 per centum ad valorem; if bleached, dyed, colored, or stained, 20 per centum ad valorem; * * *.

According to a well-established rule, the "similitude" provisions of the tariff act take precedence over the "nonenumerated" provisions. Therefore, if a given importation does not respond directly

to any of the dutiable enumerations of the act, but nevertheless is capable of classification thereunder because of a similitude of material, quality, texture, or use, duty should be assessed according to that similitude, rather than under the provision for nonenumerated articles. With this rule in mind we conclude at once that the present articles should not be relegated to the nonenumerated provisions of the act, but should be assessed with duty either under paragraph 319 or paragraph 335, supra, since the articles plainly resemble those described in each paragraph, in certain of the particulars specified in the similitude provisions. The issue therefore resolves itself into what may be called a competition between the several similitudes in question.

In coming to compare the relative degrees of resemblance between these hat braids and the articles enumerated in the competing paragraphs aforesaid, we are constrained to say that they assimilate more nearly to the hat braids composed of chip, grass, etc., which are enumerated in paragraph 335, than to the articles composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk, as enumerated in paragraph 319.

The first point of comparison which is prescribed by the act for the determination of similitudes, relates to the "material" of which the respective articles are composed. Upon this point the board held that hydrocellulose was the basic material of which both the hat braids and the articles of artificial silk are composed, and that because of that identity of basic material the respective articles should be held to assimilate in that particular.

We think, however, that this conclusion is of doubtful application in this case. For if it be accepted that hydrocellulose is the basic material of both classes of articles, it follows that the articles are identical in point of material; and it has been held in repeated cases that such an identity does not constitute a similarity within the sense of the similitude provisions.—Strauss *v.* United States (2 Ct. Cust. Appls. 203, 205; T. D. 31946); Isler & Guye *v.* United States (5 id. 229, 233; T. D. 34401); Schoenemann *v.* United States (119 Fed. 584, 586). And if, upon the other hand, "yarns, threads, filaments, or fibers of artificial or imitation silk," and not the original or basic hydrocellulose itself, be accepted for similitude comparisons, as the "material" composing artificial-silk hat braids under paragraph 319, it would follow that in respect to such "material" the imported hat braids do not assimilate with artificial-silk hat braids, since their component bands or ribbons of cellophane are not capable of use in sewing, spinning, or weaving, as are yarns, threads, or filaments of artificial silk.—United States *v.* Veit (8 Ct. Cust. Appls. 290; T. D. 37540). Upon such a comparison the present cellophane bands

assimilate much more nearly as "material" to strips of chip, straw, grass, etc., than yarns, threads, and filaments of artificial silk, for in respect to form and shape the broad, thin, glossy bands composing the present braids bear no resemblance whatever to yarns, threads, filaments, or fibers of any material, but bear a distinct resemblance to strips or bands of straw, grass, or chip. It appears, therefore, that the question of similitude can not be settled in this case upon the point of a resemblance in "material."

In respect to use the present articles more nearly resemble hat braids composed of straw, chip, etc., as enumerated in paragraph 335, since they are designed exclusively for use in making or ornamenting spring and summer hats and bonnets, which also is the exclusive use stipulated for the braids named in paragraph 335, and are used or applied in the same manner as these. On the other hand, the enumerations in paragraph 319 for articles composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial silk, contain no limitation as to use, since the term "articles" covers and includes many different objects designed for various uses.

We may observe furthermore, that the present hat braids respond eo nomine to the applicable enumeration of paragraph 335, to wit, "braids. * * * suitable for making or ornamenting hats, bonnets, or hoods," whereas, as already observed, the competing enumeration in paragraph 319 is the merely general one of "other articles or fabrics." In this respect the former provision is plainly the more specific of the two and therefore should govern the case, unless prevented by other considerations. As already observed, we do not find any such opposing consideration in the matter of component "material," and the remaining criteria which are specified in the similitude paragraph, namely, "quality" and "texture," do not seem to furnish a basis of comparison.

We conclude, therefore, that the braids in question are dutiable by similitude with braids of straw, grass, and chip, at the rate of 20 per cent ad valorem, under paragraph 335, supra. Accordingly, protest 938271, which contains such a claim, should have been sustained, and the board's decision overruling that protest is reversed. The other protest contained in the record, to wit, No. 936990, wherein the foregoing claim was not included should have been overruled, and the board's decision to that effect is sustained. The case is accordingly remanded.

Note the decision of this court upon similar merchandise in the case of Rolland Frères v. United States (11 Ct. Cust. Appls. 321; T. D. 39141) handed down concurrently herewith. *Modified.*