**No. 48404.**—Protest 894357–G of Kawahara Co (Los Angeles).

Keefe, Judge:    This case involves the classification of certain Durikono, imported from Japan.    Duty was assessed thereon under paragraph 1558 of the Tariff Act of 1930 as a nonenumerated manufactured article.    The plaintiff relies upon the claim that the merchandise is properly dutiable as a sugar sirup under paragraph 502.

The paragraph of the act at issue here provides as follows:

Par. 502.    Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, one-fourth of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five one-thousandths of 1 cent additional for each per centum of total sugars and fractions of a per centum in proportion.    Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three-one-hundredths of 1 cent per pound of total sugars.

The Customs Regulations of 1931 defines total sugars as follows:

Art. 757.    Total sugars defined.—The expression "total sugars," occurring in the tariff act, shall be construed to mean the sum of the sucrose (Clerget) the raffinose, and the reducing sugars.

At the trial a sample of the merchandise was admitted in evidence as exhibit 1. The bottle containing the merchandise bears a printed label stating that Durikono is a fruit juice containing the following ingredients: Grape sugar 32.34 percent;

fruit sugar 31.46 percent; cane sugar 1.45 percent; ash .11 percent; and water 34.64 percent. In the printed directions on the bottle Durikono is to be diluted with from 5 to 7 parts of water or milk, excepting hot milk, in order to form an "exceedingly tasteful drink."

A portion of exhibit 1 was analyzed by plaintiff's witness, a well qualified chemist, who found that the product contained 19.6 percent dextrose; 20.7 percent levulose; 24.4 percent sucrose; .14 percent ash; .22 percent acetic acid; .05 percent alcohol; 33.10 percent water; and 1.79 percent of an undetermined material. The analysis was admitted in evidence as exhibit 2.

This witness testified that the article contained coloring matter and some flavoring in the undetermined portion. He further testified that he was unable to obtain the number of sugar degrees but found 64.7 percent of total sugars in the article, and that the difference between the imported article and a simple sugar sirup was in the percentage of sucrose, the presence of alcohol, and possibly the acid. The witness further testified that the levulose and dextrose are reducing sugars and the imported article contained sugars in higher quantities than found in molasses; that a simple sirup contains 64.74 percent of sugar while he found 64.7 percent in the article in question. However, the percentage he found was made up of sucrose, dextrose, and levulose, which is entirely different from a simple sirup; that sucrose is the usual cane sugar while dextrose and levulose may be produced in equivalent quantities from sucrose by inversion, but are not common sugars.

A Government chemist testifying for the defendant after testing the article herein for the flavoring material stated that he found it to be of a highly volatile nature but identified it by its odor as pineapple and raspberry. He was of the opinion that the flavoring was synthetic and that the small portion required could easily be contained in the 1.79 percent of undetermined material reported by the plaintiff's witness.

The importer contends that Durikono is dutiable according to its sugar content under the provisions of paragraph 502, either directly or by similitude, arguing that paragraph 502 was designed to cover articles containing mixtures of sucrose and other sugars, as indicated by article 757 of the Customs Regulations of 1931 defining "total sugars" as including the sum of all the various kinds of sugars in an article. Plaintiff points out that "syrup" is defined in Webster's Dictionary as a liquid made from the juice of fruits, etc., boiled with sugar, and therefore a sugar sirup is a solution which contains a large proportion of sugar, irrespective of its other ingredients, and consequently Durikono, because of its sugar content, is either a sirup or is similar to sirup irrespective of its other ingredients. That Durikono contains the same amount of sugar as does a sirup, and for that reason is entitled to classification under paragraph 502, the sugar content being the criterion affecting the classification under that paragraph.

The Government contends that paragraph 502 is intended to cover the simple sugar sirups drained from the sugar crystals formed by the boiling of sugarcane and includes such products as are the direct result of the manufacture of raw sugar and that are the ordinary table or household molasses and sugar sirups. Therefore, as the merchandise here has not been shown to be the direct result of the sugarcane manufacturing process, it is not a sugar sirup within the meaning and intent of said paragraph.

It is further contended that inasmuch as the merchandise admittedly contains a flavoring material, it is not dutiable by similitude to sugar sirups under authority of *Monteverde, Rolandelli & Parodi (Inc.) v. United States*, T. D. 44233.

The paragraph under which plaintiff claims the merchandise properly dutiable provides for "Molasses and sugar sirups, not specially provided for," when containing certain percentages of total sugars. In the case of *Balfour Guthrie & Co. v. United States*, 14 Ct. Cust. Appls. 78, T. D. 41582, the court stated that:

The words "molasses" and "sirups," standing by themselves, as commonly understood and when used to designate the table product derived from sugar-cane, mean the thick concentrated or condensed liquid, liquor, or fluid drained off the sugar or crystalized sugar in the making of sugar. See "Molasses" and "Sirup," New Standard Dictionary. That Congress used those terms in their ordinary sense in paragraph 502 is evidenced by the fact that molasses and sirups are made dutiable by the gallon and not by the pound or dry measure.

The trouble with the plaintiff's definition of the common meaning of sirup is that the word "sirup" used alone is general in its meaning and includes sirups other than "sugar sirups." The paragraph in question here specifies one particular sirup, to wit, "sugar-sirup." A sugar sirup is defined in the Century Dictionary and Cyclopedia, as:

1. The raw juice or sap of sugar-producing plants, roots, or trees.—2. In the manufacture and refining of sugar, a more or less concentrated solution of sugar.

In providing for "molasses and sugar sirups, not specially provided for," Congress used those terms in their common, ordinary meaning, as held by our appellate court in the foregoing case. Clearly the article imported here, manufactured from grape, fruit, and cane sugar into a concentrated fruit juice, is not classifiable directly under paragraph 502. The question remaining is whether there is any substantial similitude in material between Durikono and sugar sirup. Surely it is something more than the raw juice or sap of sugar-producing plants mixed together. In its completed manufactured state as a concentrated fruit juice could such article as here imported become dutiable as a sugar sirup by similitude of material? In the case of *Strauss* v. *United States*, 2 Ct. Cust. Appls. 203, T. D. 31946, the court stated that:

an article cannot be made dutiable by similitude to the same article, made of the same material, in a more advanced stage of manufacture.

The components of the Durikono herein, to wit, grape sugar, fruit sugar, and cane sugar, by themselves each may come within the definition of a "sugar sirup," but these various sugars have been combined into a manufactured product. In our opinion, paragraph 502 was not intended either directly or by similitude, to cover a sirup containing sugar, even though it conformed to the total sugars required as a basis of duty, when such sirup was not in condition similar in material, quality, texture, or use to the sugar sirups there provided for. As stated in the case of *Rolland Freres (Inc.)* v. *United States*, 11 Ct. Cust. Appls. 321, T. D. 39141:

To hold otherwise would subject a raw material, not specifically enumerated, to the duty specifically imposed on such a material when advanced to the status of a manufacture having a new name and fitted for a use for which the raw material was wholly unsuitable, a result the exact reverse of that generally sought by tariff legislation.

In the case of *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls. 340, T. D. 39146, where it was contended that there was a similarity in material, the court was of the opinion that if the article as imported rather than the basic material composing the same be accepted for similitude comparisons as the "material" it would follow that in respect to such "material" the imported article did not assimilate with the enumerated article because it was not capable of use in the same manner as the enumerated article.

In *Monteverde, Rolandelli & Parodi (Inc.)* v. *United States*, T. D. 44233, *supra*, certain nonalcoholic menthe sirup and grenadine sirup were claimed dutiable under paragraph 502 as "sugar sirups." As to the sugar sirup paragraph the court was unable to find anything in the record to establish that the articles were sugar sirups. The Government chemist testified that *they consist very largely of a sugar sirup*, but also contained coloring matter and aromatic flavors, although the im-

purities other than the total sugars would be probably less than 1 percent. The court there found that the presence of the coloring and flavoring matter constituted the distinguishing features of the articles, differentiating them from other commodities of a like nature, and giving them their trade name, and since the presence of such material was determinative of the character of the merchandise, it was properly classified as a nonenumerated manufactured article. Under authority of the *Isler & Guye* case, *supra*, the doctrine of similitude would also have been inapplicable.

We are of the opinion that the foregoing case involves an issue similar to that here involved, and upon the authority of that case and for the reasons heretofore stated, judgment will be entered in favor of the defendant.